# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KENNETH J. SCHIRO,                )
                              )        3:10-cv-00203-RCJ-VPC
          Plaintiff,        )
                              )
      v.                     )        **REPORT AND RECOMMENDATION**
                              )        **OF U.S. MAGISTRATE JUDGE**
STEPHEN CLARK, *et al.*,      )
                              )
        Defendants.      )        January 14, 2013
_____)

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#92).[1]  Plaintiff opposed (#105) and defendants replied (#108).  The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#92) be granted in part and denied in part.

## I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Kenneth J. Schiro ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC").  However, the allegations set forth in plaintiff's complaint pertain to events which occurred while plaintiff was an inmate at Lovelock Correctional Center ("LCC") (#12).  On April 9, 2010, plaintiff filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, against defendants Stephen Clark, Sergeant and Hearing Officer; Mr. Hegge, Caseworker CCS II; Rogelio Herrera, Caseworker CCS II; Ms. C.

---

[1] Refers to the court's docket numbers.

Chacon, Caseworker CCS II; Mr. Tooker, Senior Correctional Officer; Amelia Jimenez, Correctional Officer; Robert LeGrand, Associate Warden of Programs; Ronald Halstead, Associate Warden of Operations; and Jack Palmer, Warden—LCC (#12).  Plaintiff's complaint contained one lengthy count alleging "breach of duty to protect, retaliation, due process, equal protection, arbitrary and irrational treatment of life, 'liberty' and property, and 'cruel and unusual treatment.'"  *Id.* at 14.

The court screened the complaint, pursuant to 28 U.S.C. § 1915A, and allowed the following claims to proceed: (1) a Fourteenth Amendment due process claim against defendant Clark; (2) an Eighth Amendment failure to protect claim against defendant Hegge; (3) a First Amendment retaliation claim against defendant Herrera; (4) an Eighth Amendment failure to protect claim against defendant Chacon; (5) a Fourteenth Amendment equal protection claim against defendant Jimenez; and (6) supervisory liability claims against defendants Tooker, LeGrand, Halstead and Palmer (#11, p. 9).

Thereafter, defendants filed a partial motion to dismiss plaintiff's complaint (#35).  The court dismissed plaintiff's Eighth Amendment claims against defendants Hegge and Chacon and plaintiff's Fourteenth Amendment equal protection claim against defendant Jimenez, as these claims were barred by the statute of limitations (#54, p. 12; #61, pp. 1-2).  However, the court allowed plaintiff's First Amendment retaliation claim against defendant Herrera to proceed, as defendants did not prove that plaintiff failed to exhaust his administrative remedies (#54, p. 12; #61, p. 2).  Thus, the remaining claims in this litigation are: (1) a Fourteenth Amendment due process claim against defendant Clark; (2) a First Amendment retaliation claim against defendant Herrera; and (3) supervisory liability claims against defendants Tooker, LeGrand, Halstead, and Palmer.

Plaintiff alleges the following, in relevant part: on December 7, 2008, plaintiff was assigned cellmate Garnica (#12-1, p. 5).  Within a few days of the assignment, Garnica began making

unwelcome sexual advances toward plaintiff. *Id.* On February 10, 2008, after plaintiff returned from the shower, Garnica lifted plaintiff's towel and licked between plaintiff's buttocks. *Id.* at 6. Plaintiff became enraged, grabbed Garnica, and threatened, "I will rip it off and shove it down your throat if you ever try that again." *Id.* Garnica began to cry, so plaintiff released him and stated, "You need to get away from me before I do something I will regret." *Id.* Plaintiff was too embarrassed to report the incident. *Id.*

On February 17, 2008, plaintiff was arrested and placed in administrative segregation (#12-1, p. 7). Plaintiff was not told why he was arrested, but was given a document stating, "solitary confinement/isolation . . . pending investigation." *Id.* On February 18, 2008, plaintiff received his personal property, along with an unauthorized property notice. *Id.* On February 19, 2008, plaintiff met with defendant Herrera. *Id.* Defendant Herrera told plaintiff that he did not know why plaintiff had been transferred to administrative segregation and asked if plaintiff wished to make a statement. *Id.* Plaintiff refused. *Id.*

Over the next several weeks, plaintiff submitted an inmate request kite and an informal grievance concerning his "missing property issue," i.e., the whereabouts of personal property items that were not delivered to plaintiff's cell and that were not listed on the unauthorized property notice. *Id.* Plaintiff also submitted an inmate request kite to defendant Tooker, requesting, "any information as to why plaintiff is being held in [administrative segregation]." *Id.* at 8.

On March 18, 2008, plaintiff met with defendant Tooker and the Inspector General, who informed plaintiff that another inmate had accused him of threats, sexual harassment, and sexual assault. *Id.* However, the Inspector General refused to disclose which inmate had made the allegations. *Id.* After interviewing plaintiff, the Inspector General stated, "this case is unfounded, without merit, and is all hearsay," and informed plaintiff that he would conclude the investigation

and close the case.  *Id.*  Thereafter, defendant Herrera told plaintiff, "I will get you out of here as quickly as possible."  *Id.*  Defendant Herrera also said, "Don't file no paperwork . . . I was suppose[d] to see you today for full class[ification].  I am just going to mark you down as that I did." *Id.*  Later that day, plaintiff received a due process notice, which was authored by defendant Herrera and signed by defendants Halstead and LeGrand.  *Id.* at 9.

On March 20, 2008, plaintiff submitted an inmate request kite requesting a full classification meeting (#12-1, p. 9).  On March 22, 2008, he received a response, stating, "You are being scheduled for full classification."  *Id.*  On March 23, 2008, plaintiff submitted an informal "civil rights grievance."  On March 24, 2008, plaintiff told defendant Herrera that he believed the case against him had been manufactured by his ex-cellmate Garnica because Garnica wished to steal some of plaintiff's personal property.  *Id.*  Plaintiff informed defendant Herrera that "hundreds of dollars of property is still missing" and that his ex-cellmate Garnica had stuck his tongue up plaintiff's backend.  *Id.* at 10.  Plaintiff told defendant Herrera that he now wished to report this incident.  *Id.*  Defendant Herrera informed plaintiff that he could share all of his concerns at the full classification hearing.  *Id.*  Plaintiff retorted that pursuant to administrative regulations, he was entitled to a formal due process hearing, and that his rights were being ignored.  *Id.*  At this point, defendant Herrera became enraged and screamed, "So you want to quote A.R.'s and civil law to me . . . Don't tell me how to do my job."  *Id.*  Defendant Herrera then walked off, making racial slurs and threatening, "So you want to file paperwork."  *Id.*  On March 24, 2008, plaintiff submitted an informal grievance complaining about defendant Herrera's behavior, which "vanished."  *Id.*

On April 2, 2008, plaintiff received a notice of charges for threats, sexual harassment, and sexual assault (#12-1, p. 11).  Plaintiff believed the notice of charges was just part of the prison's standard operating procedure and that the Inspector General had actually dismissed the case.  *Id.*

Plaintiff also received a response to his informal "civil rights grievance," which defendant Herrera denied. *Id.*

On April 7, 2008, plaintiff attended a disciplinary hearing, chaired by defendant Clark. *Id.* Defendant Clark found plaintiff guilty of sexual assault, stating that he relied upon evidence in the Inspector General's report—especially statements from confidential informants who claimed, "that it happened." *Id.* Defendant Clark sentenced plaintiff to eighteen months of disciplinary segregation, 300 days of stat time forfeiture and restitution. *Id.* On April 15, 2008, plaintiff again met with the Inspector General, who exclaimed, "They screwed up!" *Id.* at 12. Thereafter, plaintiff submitted a disciplinary appeal. *Id.*

On April 25, 2008, defendant Herrera returned to plaintiff over $100 worth of plaintiff's personal property, which his ex-cellmate Garnica had stolen. Half of the items were defaced with Garnica's identification number on them (#12-1, p. 12). Plaintiff asked defendant Herrera if he planned to charge Garnica with theft. *Id.* Defendant Herrera replied, "Do it yourself." *Id.* On May 1, 2008, plaintiff's disciplinary appeal was denied by defendant Palmer. *Id.*

Defendants allege the following:

*Defendant Herrera:*

From February 17, 2008, until May 23, 2008, defendant Herrera was plaintiff's unit caseworker (#92, p. 3; #92-1, Ex. C, ¶ 5). Upon allegations that plaintiff had sexually assaulted another inmate, defendant Herrera conducted a due process hearing and advised plaintiff that he would remain in administrative segregation while the Inspector General conducted an investigation (#92, p. 3; #92-1, Ex. B, p. 35; #92-1, Ex. C, ¶¶ 7-8). On March 18, 2008, defendant Herrera and two investigators conducted a thirty-day administrative segregation review, and determined that

plaintiff would remain in administrative segregation pending completion of the Inspector General's investigation (#92, p. 3; #92-1, Ex. B, p. 36; #92-1, Ex. C, ¶ 9).

*April 7, 2008, Disciplinary Hearing*:

On April 2, 2008, plaintiff received a notice of charges for sexually assaulting another inmate (#92, p. 2; #92-1, Ex. F, pp. 71-72).[2]  On April 7, 2008, defendant Clark conducted plaintiff's disciplinary hearing (#92, p. 2; #92-1, Ex. E; #92-1, Ex. G).  Defendant Clark asked plaintiff if he wished to present witnesses and plaintiff stated, "Uh, at this point, I don't think that's necessary" (#92, p. 2; #92-1, Ex. E, p. 52).  Later in the proceedings, plaintiff asked if he could present character witnesses (#92, p. 3; #92-1, Ex. E, p. 58).  However, defendant Clark denied plaintiff's request on the grounds that character witnesses would be irrelevant and redundant (#92, p. 3; #92-1, Ex. E, pp. 58-60, 64-65).  Defendant Clark found plaintiff guilty of MJ19: sexual assault, and explained that he based his decision on information from confidential informants and a report from the Inspector General's Office (#92, p. 2; #92-1, Ex. E, pp. 61-62; #92-1, Ex. G, p. 78).

Defendants now move for summary judgment on the grounds that: (1) there is no evidence that defendant Herrera retaliated against plaintiff for exercising his First Amendment rights (#92, p. 10); (2) defendant Clark provided plaintiff with a constitutionally adequate disciplinary hearing (#92, p. 6); (3) defendants Tooker, LeGrand, Halstead and Palmer are not liable in their supervisory capacities (#92, p. 10); and (4) defendants cannot be sued for damages in their official capacities

---

[2] The Notice of Charges stated:

> On February 17, 2008 at approximately 10:30 am I correctional Officer Jimenez, unit 3 a floor officer was approached by [inmate Garnica] of unit 3a cell 4a.  The inmate stated that he needed to speak to me regarding some embarrassing and serious issues between him and his cellie [inmate Shiro].  Inmate [Garnica] stated that he has been sexually harassed by inmate Shiro by means of inappropriate touching, grabbing, and showing of his private parts and by making comments such as, ["]I know you would like it".  Inmate Shiro has also threatened him by telling him ["]if you tell anyone I have 3 people in the unit that will take care of you".  Inmate [Garnica] stated that this has been an ongoing problem since they lived in housing unit 6 and he could not tolerate this anymore.

(#92-1, Ex. F, p. 71).

(#92, p. 12).[3]  Defendants attach several documents to support their motion for summary judgment, including: (1) plaintiff's inmate grievance history report (#92-1, Ex. A);[4] (2) plaintiff's offender information summary (#92-1, Ex. B);[5] (3) the declaration of Rogelio A. Herrera (#92-1, Ex. C); (4) the declaration of Timothy Tooker (#92-1, Ex. D); (5) a transcript from plaintiff's April 7, 2008, disciplinary hearing (#92-1, Ex. E);[6] (6) plaintiff's notice of charges (Disciplinary Form I) (#92-1, Ex. F, pp. 71-72);[7] (7) plaintiff's preliminary hearing summary (Disciplinary Form II) (#92-1, Ex. F, pp. 73-74);[8] (8) plaintiff's disciplinary hearing summary (Disciplinary Form III) (#92-1, Ex. G);[9] (9) the declaration of Stephen P. Clark (#92-1, Ex. H); (10) the declaration of Jack Palmer (#92-1, Ex. I); (11) the declaration of Ronald Halstead (#92-1, Ex. J); and (12) the declaration of Robert LeGrand (#92-1, Ex. K).

Plaintiff opposes defendants' motion, arguing that defendant Herrera retaliated against him for ignoring the order, "Do not file paperwork" (#105, p. 11).  Plaintiff alleges that the day after he submitted a "civil rights grievance," defendant Herrera entered plaintiff's "dismissed charges" into the NOTIS system, "thus orchestrating a false conviction" (#12-1, p. 15; #105, pp. 4, 12, 14).[10] Plaintiff also argues that he was "ambushed" at his April 7, 2008, disciplinary hearing when defendant Clark found him guilty of the dismissed charges (#105, p. 5).  Plaintiff alleges that defendant Clark failed to afford him an unbiased disciplinary hearing; denied him the opportunity to

---

[3] The court notes that plaintiff sued defendants Clark, Herrera, Tooker, and Halstead in both their individual and official capacities.  Plaintiff sued defendants LeGrand and Palmer in their official capacities only (#12, pp. 2-3).  Plaintiff concedes that defendants LeGrand and Palmer cannot be sued in their official capacities, but nevertheless, asks the court not to dismiss these defendants (#105, pp. 15-16).

[4] Authenticated by the declaration of Harold M. Byrne (#92, p. 15).

[5] Authenticated by the declaration of Harold M. Byrne (#92, p. 16).

[6] Transcribed by Shannon L. Taylor and authenticated by the Transcriber's Certificate (#92-1, p. 69).

[7] Authenticated by the declaration of Harold M. Byrne (#92, p. 16).

[8] Authenticated by the declaration of Harold M. Byrne (#92, p. 16).

[9] Authenticated by the declaration of Harold M. Byrne (#92, p. 16).

[10] Plaintiff later states that defendant Herrera retaliated against him for filing two grievances (#105, p. 14), citing Exhibit A and Exhibit B of his opposition.  Exhibit A consists of three grievances—dated March 27, 2008, April 4, 2008, and April 25, 2008.  Exhibit B consists of one grievance—dated March 24, 2008.

call witnesses or present documentary evidence; and relied upon insufficient evidence to warrant a guilty finding (#12-1, p. 14; #105, p. 8).  Finally, plaintiff argues that defendant Tooker personally participated in the alleged constitutional violations because defendant Tooker was present at the March 18, 2008, meeting; and that defendants LeGrand, Halstead and Palmer failed to properly supervise their subordinates (#12-1, p. 16; #105, p. 16).

Defendants reply that: (1) plaintiff has submitted no evidence to link defendant Herrera's alleged retaliatory action to plaintiff's exercise of his First Amendment rights (#108, p. 4); (2) defendant Clark properly refused to allow irrelevant character witnesses to testify at plaintiff's disciplinary hearing (#108, p. 3); (3) defendant Clark relied upon "some evidence" in finding plaintiff guilty of a sexual assault (#108, p. 3); and (4) supervisory liability is only implicated when there has been a constitutional violation (#108, p. 4).

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

### A.    Legal Standards

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in

some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the

matters asserted, but must only determine whether there is a genuine issue of material fact that must

be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a

reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment

motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

**1.   First Amendment Retaliation Claim**

"A prison inmate retains those First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.

Procunier*, 417 U.S. 817, 822 (1974).  "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such

action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th

Cir. 2005).

Federal courts were not created to supervise prisons, but to enforce the constitutional rights

of all persons, including prisoners.  "We are not unmindful that prison officials must be accorded

latitude in the administration of prison affairs, and that prisoners necessarily are subject to

appropriate rules and regulations." *Cruz v. Beto*, 405 U.S. 319, 321 (1982).  But prisoners, like other

individuals, have the right to petition the government for redress of grievances, which includes the

First Amendment right to file grievances against prison officials and to be free from retaliation for

doing so.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Of fundamental import to

prisoners are their First Amendment 'rights to file prison grievances . . ..'"  *Rhodes*, 408 F.3d at 567

(quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)).  "[B]ecause purely retaliatory actions

taken against a prisoner for having exercised those rights necessarily undermine those protections,

such actions violate the Constitution quite apart from any underlying misconduct they are designed

to shield."  *Rhodes,* 408 F.3d at 567.

Plaintiff alleges that defendant Herrera entered "dismissed charges" into the NOTIS system

in retaliation for plaintiff's March 23, 2008, "civil rights grievance" (#105, pp. 4, 12, 14).[11]

Defendant Herrera asserts that he did not retaliate against plaintiff for any reason (#92-1, Ex. C, p.

45).

The record indicates that plaintiff submitted a "civil rights grievance" complaining about

defendant Herrera's actions on March 24, 2008.  The record also indicates that the notice of charges

(Disciplinary Form I) has a "run date" of March 24, 2008 (#105, Ex. B, pp. 46-48; #92-1, Ex. F, p.

---

[11] It appears that the "civil rights grievance" to which plaintiff refers was actually submitted on March 24, 2008, and states, in relevant part:

> For the record, I was never given a formal classification meeting as states on this document.  The 18th of March 2008, at the conclusion of the interview with IG Inspector Mr. Fonimoana Mr. Herrera CCS II came up acknowledged that IG Investigator Mr. Fonimoana concluded and dismissed the investigation he was conducting.  At that time, Mr. Herrera told me, "I was suppost [sic] to give you a hearing yesterday, I was really busy, so I'm going to mark down that I seen you."
> In light of this, and the conclusion of the IG investigation, am I still pending an investigation further by LCC staff?
> Being screamed at by Mr. Herrera (his words, "How dare you quote A.R.s to me, and tell me how to do my job."  when I never did), only conveying that according to A.R.s, "I am aloud [sic] a formal classification meeting if the status of being held in ad/seg changed."
> Mr. Herrera went blistic [sic] on me, taking it personal, where sincerely that was not my intent.  I further went out to tell Mr. Herrera that I had a tongue stuck-up my backend, that I've been trying to tell staff about, (this may be product of this investigation).  Only to be told to voice all my concerns at full classification.

(#105, Ex. B, pp. 46-48).

71).  The court finds that this connection is too tenuous to support plaintiff's claim that defendant

Herrera retaliated against him.  First, the notice of charges was written by Correctional Officer

Jimenez—not defendant Herrera—on February 17, 2008.  Second, although the notice of charges has

a "run date" of March 24, 2008, there is no indication that defendant Herrera entered the alleged

"dismissed charges" into the NOTIS system on that date.  Third, plaintiff has not demonstrated that

even if defendant Herrera engaged in some sort of retaliatory action, this action chilled plaintiff's

exercise of his First Amendment rights.  Plaintiff filed numerous inmate request kites and grievances

both before and after March 24, 2008, plaintiff filed a disciplinary appeal, and plaintiff filed the

current civil lawsuit (#92-1, Ex. A; #105, Ex. C).[12]  Thus, it appears that plaintiff freely exercised his

First Amendment rights regardless of any purported retaliation on the part of defendant Herrera.

        In short, the record does not support plaintiff's retaliation claim.  Accordingly, the court

recommends that defendant Herrera's motion for summary judgment be granted as to plaintiff's First

Amendment retaliation claim.

## 2.   Fourteenth Amendment Due Process Claim

        Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be

deprived of life, liberty, or property without due process of law."  *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974).  A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or

property interest, (3) by officials acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527,

536-37 (1981).  In order to prevail on a claim of deprivation of liberty without due process of law, a

plaintiff must first establish the existence of a protected liberty interest.  After meeting this threshold

requirement, the plaintiff must then demonstrate that the defendants failed to provide the process

due.  *See Wolff*, 418 U.S. at 556-57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

---

[12] In addition, both defendant Clark and the Inspector General suggested that plaintiff file whatever paperwork he
deemed appropriate (#92-1, Ex. E, pp. 62, 66-68; #105-1, Ex. F, p. 10).

Liberty interests may arise from two sources—the Due Process Clause itself or state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  The Due Process Clause itself does not confer a liberty interest in freedom from state action taken "within the normal limits or range of custody which the conviction has authorized the State to impose."  *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Thus, the Supreme Court has found that the Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population.  *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.")  However, in certain circumstances, states may create liberty interests protected by the Due Process Clause.  *Sandin*, 515 U.S. at 483-84.  For example, in *Wolff*, the Court found that a Nebraska statutory provision created a liberty interest in an inmate's accumulation of good time credits.  418 U.S. at 557.[13]

Once a protected liberty interest has been found, the court need only decide what process is due under the Fourteenth Amendment, which is a question of law, and then decide whether defendants have provided the process due.  *Quick v. Jones*, 754 F.2d 1521, 1523 (1984).  When an inmate faces disciplinary charges, prison officials must provide the inmate with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges and a description of the evidence against the prisoner; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would be unduly harmful to institutional security or correctional goals; (3) legal assistance where the charges are complex or the inmate is illiterate; and

---

[13] Notably, *Sandin* did not alter the Supreme Court's ruling in *Wolff*.  Therefore, if an inmate challenges a prison's disciplinary action because it results in the forfeiture of his good-time credits, a liberty interest is recognized under both *Wolff* and *Sandin*.  This liberty interest triggers the procedural due process guarantees available to inmates under *Wolff*.

(4) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-70.  In addition, the findings of the prison disciplinary board must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .."  *Id.* at 455 (citing *U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)).

Plaintiff alleges that defendant Clark violated his Fourteenth Amendment due process rights because defendant Clark: (1) denied plaintiff the right to call witnesses and present documentary evidence at his April 7, 2008, disciplinary hearing; and (2) relied upon insufficient evidence to find plaintiff guilty of sexual assault (#12-1, pp. 11, 14; #105, p. 8).

As an initial matter, the court finds that plaintiff's punishment—eighteen months of disciplinary segregation, the loss of 300 days of good time credits and restitution—implicates a constitutionally protected liberty interest entitling plaintiff to the procedural protections outlined in *Wolff.  See Wolff*, 418 U.S. at 557 (loss of good time credits implicated protected liberty interest). Thus, the question before the court is whether defendant Clark provided plaintiff with the process due at plaintiff's April 7, 2008, disciplinary hearing.

As analyzed below, the court finds that defendant Clark failed to provide plaintiff with a constitutionally adequate disciplinary hearing.  First, defendant Clark should have granted plaintiff's request to call limited inmate witnesses.  At the beginning of plaintiff's disciplinary hearing, defendant Clark asked plaintiff if he wished to call witnesses (#92-1, Ex. E, p. 52).  Plaintiff replied, "Uh, at this point, I don't think that's necessary."  *Id.*  Plaintiff then explained to defendant Clark that he didn't feel it was necessary to call witnesses because he believed the case had already been dismissed by the Inspector General.  *Id.*  Defendant Clark asked plaintiff if he would like to call

"Coconut" and defendant Tooker if he was found guilty of the charges.  *Id.* at 53.  Plaintiff replied, "No, no.  I'd like to call inmate witnesses to vouch for what type of character man I am."  *Id.*  Clark responded "Okay," and asked plaintiff to make his statement.  *Id.*

Later in the hearing, after plaintiff had made a statement, plaintiff suggested calling some inmate witnesses.  *Id.* at 58.  Defendant Clark replied:

> Okay.  Let me tell you, character witnesses I won't allow . . . during this.  I mean you can tell me all day, and you could have 500 people, which it would be redundant to say, hey, I'm a nice guy.  Uh, your witnesses, they're either relevant or redundant.  Um, that would be redundant to (indistinct) . . . They would be irrelevant to this.  We're here—we're—we're not attacking your pers—your personality . . . We're not saying, hey, you have a bad character.  So if we were, then we would allow that.  That would be relevant.  *Now, if these guys could come in and say, you know, "Yes, I've been with him 24 seven for the past seven years, and never has he touched somebody," okay then, then I would definitely allow that.  Because . . . they could vouch for the fact that you've never done this.*

*Id.* at 58-59 (emphasis supplied).  Plaintiff then clarified that this was the exact reason he wished to call inmate witnesses—to testify that plaintiff is not homosexual and has never sexually assaulted another inmate in his ten years on the LCC yard.  *Id.* at 59-60.  Defendant Clark allowed plaintiff to speak, but then simply moved on to address the charges.  *Id.* at 60.

Defendant Clark explained to plaintiff that he was finding plaintiff guilty of MJ19: sexual assault.  *Id.* at 61.  Thereafter, plaintiff again asked if he could call "character" witnesses, and defendant Clark replied, "The character witnesses, um, I'll be honest, they're not going to help you."  *Id.* at 64.

The court notes that a disciplinary hearing officer has the authority and discretion to refuse to call witnesses that would present irrelevant or unnecessary testimony.  *Wolff*, 418 U.S. at 566 (the right to call witnesses at a disciplinary hearing is limited, available to an inmate "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.")  Here, however, the disciplinary hearing officer was incorrect in his assertion that plaintiff's proposed

1
2
3
4
5
6
7
8
9
10
11
12

inmate witnesses would provide irrelevant or unnecessary testimony.  The issue of plaintiff's sexuality is central to plaintiff's claim that he would never have sexually fondled his ex-cellmate. Plaintiff did not wish to call inmate witnesses to testify as to plaintiff's general character, i.e. his aptitude for being a "nice guy," but wished to call several inmates to testify that he is not homosexual and would never have sexually assaulted another inmate (#92-1, Ex. E, pp. 59-60). Defendant Clark even conceded that if plaintiff's inmate witnesses could vouch for the fact that plaintiff had never sexually assaulted another inmate, this testimony would be relevant and defendant Clark would allow it.  *Id.*  Nevertheless, defendant Clark refused to allow plaintiff to call inmate witnesses on the grounds that these witnesses would be irrelevant and redundant to plaintiff's sexual assault charge.  *Id.* at 58-59.

13
14
15
16
17
18

The court finds that evidence of plaintiff's sexual preference would be directly relevant to rebut the alleged victim's complaints and should have been allowed by the disciplinary hearing officer.  Accordingly, the court finds that defendant Clark violated plaintiff's Fourteenth Amendment due process rights by refusing to allow plaintiff to call any inmate witnesses to testify at plaintiff's April 7, 2008, disciplinary hearing.[14]

19
20
21
22
23
24
25
26

Second, the court finds that defendant Clark's guilty finding is not adequately supported by the record.  As noted above, the findings of the prison disciplinary board must be supported by some evidence in the record.  *Hill*, 472 U.S. at 454.  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .."  *Id.* at 455 (citation omitted).  Defendant Clark relied upon the Inspector General's investigative report and statements by confidential witnesses in finding plaintiff guilty of sexual assault (#92-1, Ex. E, pp. 61-65; #92-1,

27
28

---

[14] Plaintiff also alleges that defendant Clark denied him the opportunity to present documentary evidence at the April 7, 2008, disciplinary hearing.  However, plaintiff does not specify what documentary evidence defendant Clark prevented him from presenting.

-16-

Ex. H, p. 82).  Defendant Clark also stated that in order for him to find plaintiff guilty of sexual

assault, there had to have been statements from two or more *independent* witnesses "that, yes, this

happened" (#92-1, Ex. E, p. 61).  Defendant Clark explained:

> Mr. Shiro, if this were one inmate saying, "Hey, he did this," and then you say, "No, I
> didn't do this," that would be one case.  Um, however, the Nevada Department of
> Corrections has a system in which two or more inmates val—independent inmates
> validate something, then it is validated.  We have to take it as true.  And in this case,
> that's what happened . . . um, pretty much said there's no other alternative but to find
> you guilty.

*Id.* at 63-64.  Thus, by his own admission at the disciplinary hearing, defendant Clark established the

"some evidence" standard for inmate sexual assault—two independent witnesses must corroborate

the incident.  *See Hill*, 472 U.S. at 454.

The court has reviewed the *in camera* materials submitted by defendants' counsel, including

the entire Inspector General's report, and finds that there is insufficient evidence to conclude that

plaintiff committed MJ19: sexual assault.  It is clear that defendant Clark mistakenly believed that

the Inspector General's report contained statements from two independent witnesses who

corroborated the alleged sexual assault.  However, the Inspector General's report reveals that there

was only one independent witness, which by defendant Clark's own admission, fails to meet

NDOC's threshold for finding an inmate guilty of sexual assault.

Accordingly, the court recommends that defendant Clark's motion for summary judgment be

denied as to plaintiff's Fourteenth Amendment Due Process claims.

### 3.  Supervisory Liability

"Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by

the defendant."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also*

*Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007).  Supervisory personnel are generally not liable

under section 1983 for the actions of their employees under a theory of *respondeat superior*.  Thus,

when a named defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be established.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  To prevail on a theory of supervisory liability, the plaintiff must establish that the defendant either: "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Id.* (internal quotations omitted).

The evidence before the court demonstrates that plaintiff's Fourteenth Amendment due process rights were violated when defendant Clark refused to allow plaintiff to present relevant inmate testimony at the April 7, 2008, disciplinary hearing; and when plaintiff was found guilty of sexual assault despite insufficient corroboration.  Plaintiff has sued defendants Tooker, LeGrand, Halstead and Palmer in their supervisory capacities for these constitutional violations.

The court notes that plaintiff has sued defendants LeGrand and Palmer in their official capacities only.  State officials sued in their official capacity for damages are not "persons" for the purposes of 42 U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *accord Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993) (en banc).  Thus, the court recommends that defendants LeGrand and Palmer be dismissed from this action.

As for defendants Tooker and Halstead, plaintiff has not established a causal link between either of these defendants and the claimed constitutional violations.  Plaintiff alleges that defendant Tooker was present during the March 18, 2008, interview with the Inspector General; and that defendant Halstead, as Associate Warden of Operations, should have acted to protect plaintiff from the injustice done to him.  However, the record reflects that neither defendant Tooker nor defendant Halstead were personally involved in plaintiff's disciplinary hearing or in the investigation of

plaintiff's alleged misconduct (#92-1, Ex. D, ¶¶ 6, 9; #92-1, Ex. J, ¶ 6). There is also no evidence to suggest that either defendant Tooker or defendant Halstead "knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights . . .." *See Hansen*, 885 F.2d at 646.

Accordingly, the court recommends that defendants Tooker, LeGrand, Halstead and Palmer's motion for summary judgment be granted as to plaintiff's supervisory liability claims.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendant Herrera is entitled to summary judgment in his favor as to plaintiff's First Amendment retaliation claim; and that defendants Tooker, LeGrand, Halstead and Palmer are entitled to summary judgment in their favor as to plaintiff's supervisory liability claims, as there appears to be no genuine issues of material fact for trial. However, defendant Clark is not entitled to summary judgment in his favor as to plaintiff's Fourteenth Amendment due process claims. Therefore, the court recommends that defendants' motion for summary judgment (#92) be **GRANTED in part** and **DENIED in part**. The parties are advised:

1.       Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.       This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#92) be **GRANTED in part** and **DENIED in part** as follows:

1.   **IT IS RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's First Amendment retaliation claim.

2.   **IT IS RECOMMENDED** that defendants' motion for summary judgment be **DENIED** as to plaintiff's Fourteenth Amendment due process claims.

3.   **IT IS RECOMMENDED** that defendants LeGrand and Palmer be **DISMISSED** from this action, as they were sued in their official capacities only.

4.   **IT IS RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's supervisory liability claims.


**DATED:** January 14, 2013.

_____

**UNITED STATES MAGISTRATE JUDGE**